In re WORLDCOM SECURITIES LITIGATION.

California Public Employees' Retirement System, California State Teachers' Retirement System, The Los Angeles County Employees Retirement Association, Board of Trustees of the Teachers' Retirement System of the State of Illinois, State Universities Retirement System on Illinois, Illinois State Board of Investment, West Virginia Investment Management Board, Contra Costa County, Employees' Retirement System, Oakland Fire and Police Retirement System, Sacramento County Employees' Retirement System, Sacramento Regional Transit District Contract Employees' Retirement Plan, Sacramento Regional Transit District Salaried Employees' Retirement Plan, San Bernadino County Employees' Retirement Association, Sonoma County Employees' Retirement Association, Tulare County Employees' Retirement Association, Ventura County Employees' Retirement Association, Washington State Investment Board, Minnesota State Board of Investment, Los Angeles Board of Fire & Police Pension Commissioners, Board of Administration of the Los Angeles City Employees' Retirement System, The Maryland–National Capital Park and Planning Commission Employees' Retirement System, Heavy & General Laborers' Locals 472 & 172 Annuity Fund, Milwaukee Employees' Retirement System, Maine State Retirement System, Municipal Employees' Retirement System of Michigan, Monroe County Employees' Retirement System, State

of Alaska Department of Revenue, Alaska State Pension Investment Board, and Carpenters Pension Trust for Southern California, Plaintiff–Appellants,

v.

Caboto–Gruppo Intesa BCI and Caboto Holdings Sim S.p.A., Defendant–Appellees.

Docket No. 05–6979–cv.

United States Court of Appeals, Second Circuit.

Argued: Nov. 6, 2006.

Decided: July 26, 2007.

Eric Alan Isaacson (William S. Lerach, Darren J. Robbins, Michael J. Dowd, Spencer A. Burkholz, Thomas E. Egler, Joseph D. Daley, Tami Falkenstein Hennick, on the brief), Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA; and Patrick J. Coughlin, Randi D. Bandman, Azra Z. Mehdi, on the brief, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, for Plaintiff–Appellants.

Robert A. Horowitz (Toby S. Soli, on the brief), Greenberg Traurig, LLP, New York, NY, for Defendant–Appellees.

Before: FEINBERG, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the Southern District of New York (Cote, *J.*), which dismissed the actions of certain bondholders ("Appellants") of WorldCom, Inc. as time-barred. The question presented is whether the filing of a complaint asserting a class action tolls the statute of limitations for putative class members who file individual suits (asserting the same claims) prior to the class certification decision.

The Appellants are public and private pension funds, which purchased bonds of WorldCom. In these suits brought against the underwriters of the bonds under Sec-

tion 11 of the Securities Act of 1933, the Appellants allege that the registration statements covering the bonds they purchased contained false and misleading information. The statute of limitations for such actions requires that claims be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. These complaints initially named as defendants a number of underwriters—not including Caboto–Gruppo Intesa BCI and Caboto Holdings Sim S.p.A. (collectively, "Caboto") who are the Appellees. The complaints were later amended to add the Caboto defendants. The assertion of claims against Caboto in these actions did not occur until more than one year after the Appellants were put on inquiry notice of the misinformation in the registration statements. In the meantime, however, and prior to the expiration of the Appellants' one-year limitations period, other purchasers of the WorldCom bonds had filed timely class action suits under Section 11 against Caboto purporting to represent Appellants as members of the class. In the district court, responding to Caboto's motion to dismiss the suits for untimeliness, the Appellants argued that the filing of these class actions had tolled the statute of limitations as to their claims under the doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974): "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class...." *Id.* at 554, 94 S.Ct. 756. The district court rejected this argument because the Appellants had filed their individual suits before the class suits on their behalf had been certified. The district court held that tolling under *American Pipe* is unavailable to class members who, like the Appellants,

file individual suits before the class certification decision. The court therefore found the Appellants' suits to be untimely and dismissed them. We disagree with the district court. As we understand the rule of *American Pipe*, it provides that the filing of a class action tolls the statute of limitations for all members of the asserted class, regardless of whether they file an individual action before resolution of the question whether the purported class will be certified.

## Background

The district court summarized the origins of this complex litigation:

> For many years, WorldCom grew by acquisitions. By 1998, it had acquired more than sixty companies in transactions valued at over $70 billion.... In early 2000, however, its attempt to acquire Sprint collapsed. During this period of acquisition-driven expansion, WorldCom had used accounting devices to inflate its reported earnings. Senior WorldCom management instructed personnel in the company's controller's office on a quarterly basis to falsify WorldCom's books to reduce WorldCom's reported costs and thereby to increase its reported earnings. When the pace of acquisitions slowed, it added new strategies to disguise a decline in its revenues. In 2002, however, the scheme collapsed.

*In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392, 400 (S.D.N.Y.2003).

In February 2002, WorldCom reduced its revenue and earnings forecasts for the year, and reduced them again on April 22. Shortly thereafter, the first investor class action lawsuit against WorldCom was filed on April 30, 2002. On June 25, WorldCom admitted publicly that it had previously issued false and misleading financial statements. WorldCom admitted it had over-

stated earnings and had falsely reported ordinary costs as capital expenditures. Soon after this public disclosure, World-Com filed for bankruptcy. Once World-Com's admission became public, numerous class action lawsuits were filed in various federal courts around the country on behalf of purchasers of WorldCom securities. In August 2002 the Judicial Panel on Multi–District Litigation consolidated the federal court class actions before Judge Cote in the United States District Court for the Southern District of New York.

In the same period, numerous individual actions were filed by holders of WorldCom securities, primarily in state courts. After WorldCom's public disclosures, between July 2002 and October 2003, over 120 public and private pension funds, all represented by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP, filed individual state-court actions asserting claims relating to their purchase of WorldCom bonds. These state-court suits alleged claims under the Securities Act of 1933, but not under the Exchange Act of 1934. This choice was apparently intended to prevent removal of the state-court actions to federal court. Federal courts have exclusive jurisdiction over Exchange Act claims, *see* 15 U.S.C. § 78aa, and any claim joined to an Exchange Act claim may also be removed under 28 U.S.C. § 1441. By contrast, the Securities Act grants state and federal courts concurrent jurisdiction and generally bars the removal of state-court actions to federal court. *See* 15 U.S.C. § 77v(a).

Notwithstanding this strategy, the Appellants' state-court actions were removed

to federal court under 28 U.S.C. § 1452(a), which permits removal from state courts of actions falling within the federal courts' bankruptcy jurisdiction. The Appellants challenged the removal, but the district court concluded that their cases were removable because they were "related to" the WorldCom bankruptcy, *In re World-Com, Inc. Sec. Litig.*, 293 B.R. 308 (S.D.N.Y.2003)—a decision later affirmed on appeal, *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004). The Appellants' actions were thus consolidated with the class actions in May 2003.

The first of these class action suits was filed by one group of Appellants, the State of Alaska Department of Revenue and the Alaska State Pension Investment Board (the "Alaska Appellants"), in state court in Alaska on April 21, 2003. Their complaint alleged that the Alaska Appellants suffered substantial losses arising out of their purchases of bonds from WorldCom's August 1998, May 2000, and May 2001 offerings. The complaint named as defendants a number of the underwriters of those bonds.[1] On September 24, 2003, a month after the removal of their suit to the U.S. District Court for the Southern District of New York, the Alaska Appellants amended their complaint, adding additional underwriters (the "Additional Underwriters")— including Caboto—as defendants. The Caboto defendants are the sole appellees in this appeal.

The amended complaint alleged that Caboto, as well as other underwriters, violated Section 11 of the Securities Act,[2] which

---

1. According to the district court, "[t]he allegations in the complaints filed in each of the Milberg Weiss Actions are similar, but not identical." The district court and the parties treat the Alaska Appellants' complaints as representative pleadings, as do we.

2. The amended complaint also contains allegations against J.P. Morgan Chase & Co. and J.P. Morgan Securities Inc. under Section 12(a)(2) of the Securities Act arising out of a December 2000 bond private placement. Because these companies are not parties in the present appeal, this opinion omits discussion

imposes liability on underwriters of securities when the registration statement contains an "untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a). The Alaska Appellants alleged that the registration statements and prospectuses for the WorldCom bond offerings contained false and misleading statements. Though the amended complaint described at length the fraud committed by WorldCom and its affiliates, the Alaska Appellants expressly specified that their Section 11 claims were not based on fraud, but rather on negligence and strict liability for registration statements containing untrue statements of material fact.

On October 24, 2003, the district court certified a class action involving securities claims against WorldCom. The named class action plaintiffs included groups that had purchased bonds during the May 2000 and May 2001 bond offerings, but not the August 1998 bond offering. The class action complaint asserted Section 11 claims against underwriters of the bond offerings, including Caboto.

The underwriter defendants in the Alaska Appellants' action moved to dismiss based, *inter alia,* on statute of limitations grounds. The district court permitted all the other Appellants to oppose the motion through a joint amicus brief. The court noted that once it had decided the motion in the Alaska Appellants' case, the parties in the other actions would be allowed to argue whether the resolution of that motion should govern their cases.

The underwriter defendants based their statute-of-limitations argument on Section 13 of the Securities Act, which provides:

of Section 12(a)(2) and the December 2000

No action shall be maintained to enforce any liability created under section 77k [Section 11] ... of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created under section 77k [Section 11] ... of this title more than three years after the security was bona fide offered to the public....

15 U.S.C. § 77m. Thus, a suit alleging that a securities underwriter violated Section 11 must be filed (a) within one year of the date that the plaintiff was on actual notice or inquiry notice of the violation, *and* (b) within three years of the date that the security was offered to the public. The underwriter defendants argued that the claims in the Alaska Appellants' original complaint, as well as claims added in the amended complaint, were barred by the one-year time limit, the three-year time limit, or both.

In response, the Alaska Appellants (and the other Appellants, through their amicus brief) argued that their claims should be governed by the longer statutes of limitations provided for in the Sarbanes–Oxley Act, rather than the shorter ones described in Section 13 of the Securities Act. The Sarbanes–Oxley Act provides for two- and five-year limitations periods for private securities cases "that involve[ ] a claim of fraud, deceit, manipulation, or contrivance...." 28 U.S.C. § 1658(b). However, the district court held that the Alaska Appellants could not benefit from these longer limitations periods, because they had expressly disavowed relying on allegations of fraud or intentional misconduct, basing their Section 11 claims entirely on theories of negligence and strict lia-

bonds.

bility. Moreover, the court found that the Sarbanes–Oxley Act's language and legislative history confirmed that its limitations periods were not available in Section 11 claims such as those asserted by the Alaska Appellants.

Having found that the Securities Act's one- and three-year statutes of limitations applied to the Alaska Appellants' claims, the district court held that any claims based on the August 1998 bond offering had expired in August 2001 and were time-barred.[3] The district court next turned to the Section 11 claims based on the May 2000 and May 2001 bond offerings. The Securities Act required that these claims be brought within one year after the Alaska Appellants were on inquiry notice of the inaccuracies in the bond-offering registration statements. The Alaska Appellants' initial complaint was brought on April 21, 2003. Upon examination of the public disclosures of WorldCom, the court ruled that the underwriters had failed to demonstrate as a matter of law that the Alaska Appellants were on inquiry notice as of April 20, 2002—a year and a day before the original complaint.

However, the court noted that claims against the *additional* underwriter defendants, including Caboto, were asserted for the first time in the amended complaint on September 24, 2003. WorldCom had revealed much of its financial misconduct on June 25, 2002, when it publicly restated its earnings and expenses. Therefore, the court held, the Alaska Appellants were on inquiry notice of their Section 11 claims as of that date at the latest,[4] and their claims against the Additional Underwriters were filed past the one-year deadline, which expired on June 25, 2003, one year after Appellants were first on inquiry notice regarding WorldCom's financial misconduct. Those claims would have to be dismissed unless the statute of limitations was tolled by virtue of the class actions asserted against the additional underwriter defendants.

The Alaska Appellants argued that, under the doctrine of *American Pipe,* their claims were tolled by the filing of a World-Com class action on April 30, 2002. In *American Pipe,* the Supreme Court held that the filing of a class suit tolled the statute of limitations for class members who sought to intervene after the class certification motion was denied for failure to demonstrate numerosity. 414 U.S. at 552–53, 94 S.Ct. 756. In later cases, the Court extended its ruling to class members who opted out after the certification motion was granted, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and to class members who filed separate suits after class certification was denied, *see Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). The Alaska Appellants argued that their suits should also benefit from *American Pipe* tolling, pointing to language in these opinions, which articulates the principle in broad terms. *See, e.g., id.* at 350, 103 S.Ct. 2392 ("The filing of a

---

**3.** Because it held that the Sarbanes–Oxley Act's statutes of limitations did not apply to the Alaska Appellants' claims, the court declined to consider whether the Act could be applied retroactively to revive a claim that had expired before its passage. The Second Circuit later took up this question and concluded that Sarbanes–Oxley did not revive expired claims. *See In re Enterprise Mortgage Acceptance Co. Sec. Litig.,* 391 F.3d 401 (2d Cir.2004) (as amended Jan. 7, 2005). As a result, claims relating to the August 1998 bond offering, which expired a year before Sarbanes–Oxley's passage, cannot be revived and are not at issue in the present appeal, which the Appellants concede.

**4.** The Appellants do not contest this finding on appeal.

class action tolls the statute of limitations 'as to all asserted members of the class....'" (quoting *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756)). The earliest federal WorldCom class actions were filed on April 30, 2002, and several others were filed soon thereafter. If the filing of these class action suits tolled the Securities Act's statutes of limitations, then the claims against the Additional Underwriters by entities asserted to be class members would still be viable, notwithstanding the fact that they were filed more than a year after the plaintiffs were put on inquiry notice.

The district court ruled that the Alaska Appellants could not benefit from *American Pipe* tolling. The court reasoned that the justification for the doctrine was to avoid the filing of numerous suits by individual class members as a safeguard to preserve their option of proceeding by individual action. With the benefit of *American Pipe* tolling, class members could wait until after certification was resolved before deciding whether to file their individual suits. According to the district court's reasoning, class members (such the Alaska Appellants) who filed individual suits *before* the certification decision were not entitled to have their claims tolled, because such individual suits were precisely what the *American Pipe* tolling doctrine sought to avoid.

The Alaska Appellants argued that unless claims like theirs qualified for *American Pipe* tolling, parties who intend to file their own suits "will simply forbear doing so until it is time to opt out of the class." The district court responded that such a delay would have beneficial effects:

> The parties and courts will not be burdened by separate lawsuits which, in any event, may evaporate once a class has been certified. At the point in a litigation when a decision on class certification is made, investors usually are in a far better position to evaluate whether they wish to proceed with their own lawsuit, or to join a class, if one has been certified.

The court concluded that "Plaintiffs who choose, as is their right, to pursue separate litigation may not enjoy the benefits of that separate litigation without bearing its burdens," including the burden of filing suit within the applicable statute of limitations.

Because the district court held that the filing of the WorldCom class actions did not toll the statute of limitations as to the Alaska Appellants' claims, those claims expired a year after the Alaska Appellants were on inquiry notice of the falsities in WorldCom's registration statements—at the latest, a year after WorldCom's public disclosures on June 25, 2002. The claims in the amended complaint against the Additional Underwriters, which was filed in September 2003, were untimely. The court dismissed with prejudice all the Alaska Appellants' claims against the Additional Underwriters.

After the district court issued its opinion on November 21, 2003, the underwriters in the other Appellant actions (as well as some additional suits not filed by Milberg Weiss) moved to dismiss based largely on the grounds of the district court's ruling. The Appellants opposed the motions to dismiss, and the Alaska Appellants moved the court to reconsider certain aspects of its opinion. The district court again rejected the argument that *American Pipe* tolling should apply to the Appellants' claims against the Additional Underwriters. After rejecting other arguments (which are not relevant for present purposes), the district court dismissed with prejudice the Appellants' claims against the additional underwriters under the Securities Act's statute of limitations.

The district court's opinion was issued on January 20, 2004. On July 22, 2004, the court ordered the dismissal with prejudice of most of the Appellants' Section 11 claims, including all Section 11 claims against the Additional Underwriters. In its orders of dismissal, the court noted:

> [I]f any plaintiff files a motion to dismiss its lawsuit voluntarily by the end of the opt out period for the WorldCom consolidated class action, the plaintiff shall be permitted to remain a member of the Class without prejudice as to its right to recover for any claims that are brought on behalf of the Class.

Most or all of the Appellants declined to voluntarily withdraw their suits and rejoin the class.

In November 2005, the Appellants settled with all of the underwriters except one—Caboto. Appellants' individual claims against Caboto appeared for the first time in their amended complaints, and those claims relate only to the May 2001 offering. Therefore, the only issues on appeal concern whether the district court was correct to dismiss with prejudice the amended complaints' claims against Caboto based on the May 2001 offering.

## Discussion

The question is whether a plaintiff, which is identified as a member of the plaintiff class in a class action suit, is deprived of the benefit of the tolling provided by the *American Pipe* doctrine if it filed its own individual action before the motion for class certification was resolved. We agree with the Appellants that their time to file should have been tolled upon the filing of a class action purporting to assert their claims, regardless of their having also filed individual actions asserting the same claims.

### A

In *American Pipe,* the Supreme Court considered a case in which the State of Utah brought an antitrust suit eleven days before the one-year statute of limitations was set to expire. The State purported to bring the suit as a class action, but the district court denied the State's motion to certify the class because it found that the requirement of numerosity of Rule 23 of the Federal Rules of Civil Procedure was not met. (The court agreed that the State's claims were typical of the class and that the State was an adequate representative.) After denial of the motion, and beyond the limitations period, parties that would have been class members had certification been granted moved to intervene. The district court denied the motion to intervene on the ground that the would-be intervenors' claims were barred by the statute of limitations. *See* 414 U.S. at 541–44, 94 S.Ct. 756.

The court of appeals reversed, and the Supreme Court agreed with the court of appeals that the intervenors were not time-barred. After considering the history of Rule 23, the Court noted that the present version of the Rule makes class actions "truly representative suit[s]" in which the claims of class members are pressed by the class representatives. *Id.* at 550, 94 S.Ct. 756. As a result, the class members should be considered parties to the suit "until and unless they received notice thereof and chose not to continue." *Id.* at 551, 94 S.Ct. 756. Thus, just as the filing of the class action satisfied the State of Utah's statute-of-limitations obligations, it also did so for class members, including the intervenors. To hold otherwise would "frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until

after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid...." *Id.* In other words, unless class members' claims were tolled by the filing of the class suit, those class members would be forced to initiate their own actions in anticipation of the possibility that a motion for class certification would be denied.

The Court next explained that its ruling was not limited to class members who had deliberately relied on the class action to advance their claims. Just as class members need not actively participate in order to profit from the class action's eventual outcome, they may also benefit passively from the suit's tolling effect on the statute of limitations. Even class members who were unaware of the class action—indeed, even those who "demonstrably did not rely" on it—should benefit from the tolling. *Id.* at 552, 94 S.Ct. 756.

The Court noted that its ruling was not inconsistent with the purposes of a statute of limitations. Statutes of limitations are designed to prevent " 'the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " *Id.* at 554, 94 S.Ct. 756 (quoting *Order of R.R. Telegraphers v. Ry. Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). Statutes of limitations thus guard against unfair surprises that result from the resurrection of stale claims. The need to put an adversary on notice to defend against a claim is served when a class action is brought identifying both the nature of the claim and the plaintiffs who may participate in the judgment. "Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the sub-ject matter and the size of the prospective litigation...." *Id.* at 555, 94 S.Ct. 756.

The Court announced the rule in general terms:

> We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

*Id.* at 554, 94 S.Ct. 756.

The Supreme Court revisited the rule in *American Pipe* shortly after the decision was issued. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), was an antitrust class action against brokerage firms and stock exchanges. One question presented was whether, under the particular circumstances of the case, individual notice to identifiable class members was required or was merely discretionary. In a footnote, the Court rejected the argument that class members (even if individually notified) would not opt out of a class action because the statute of limitations would have run on what would have been their individual causes of action. The Court explained that "[t]his contention is disposed of by our recent decision in *American Pipe* ..., which established that commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Id.* at 176 n. 13, 94 S.Ct. 2140. In other words, the claims of class members who opted out would not be time-barred, because the statute of limitations on those claims was tolled by the filing of the class action.

The third and final Supreme Court opinion to discuss the issue was *Crown, Cork & Seal.* The plaintiff, Theodore Parker, filed a race-discrimination charge with the Equal Employment Opportunity Commis-

sion ("EEOC") in October 1977. While his charge was pending before the EEOC, others filed a purported class action based on similar allegations. In September 1980, a motion for class certification was denied. Parker, who was within the asserted plaintiff class, filed suit in federal court in October 1980—within 90 days of the denial of class certification, but almost two years after the EEOC had issued him a Right to Sue letter. The district court dismissed his suit because he had not filed within 90 days of receiving his Right to Sue letter, as required by the applicable statute of limitations. *See* 462 U.S. at 347–48, 103 S.Ct. 2392.

■ The court of appeals reversed, and the Supreme Court affirmed the court of appeals, ruling that Parker's suit was timely. The Court explained that its holding in *American Pipe* was not limited to intervenors, reiterating that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class.'" *Id.* at 350, 103 S.Ct. 2392 (quoting *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756). The Court again noted that a contrary rule would lead class members to file anticipatory suits for fear that certification would be denied, resulting in "a needless multiplicity of actions." *Id.* at 351, 103 S.Ct. 2392. Moreover, the district court's failure to apply *American Pipe* to a nonintervenor's separate action was inconsistent with *Eisen*, where the Court noted that class members' claims would be tolled until they opted out of the class action. *Id.* at 351–52, 103 S.Ct. 2392. Finally, the Court noted that the purposes of statutes

of limitations—"to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights"—are fulfilled "when a class action is commenced." *Id.* at 352, 103 S.Ct. 2392. Class members are permitted—even encouraged—to rely on the class plaintiffs to advance their claims, and the initiation of a class suit gives defendants all the information they need to prepare their defense. Perhaps fewer suits in fewer jurisdictions would be filed if only intervenors received the benefits of *American Pipe* tolling after certification is denied, but "this is not an interest that statutes of limitations are designed to protect."[5] *Id.* at 353, 103 S.Ct. 2392. The Court again reiterated the *American Pipe* principle in broad terms, quoting directly from that decision:

> "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." [*American Pipe*, 414 U.S. at 554, 94 S.Ct. 756]. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

*Id.* at 353–54, 103 S.Ct. 2392.

## B

■ This court has not yet faced the question whether the tolling required by *American Pipe* for members of a class on whose behalf a class action is filed applies also to class members who file individual suits before class certification is resolved.[6] We now conclude that it does.

---

**5.** The Court emphasized that the *American Pipe* rule would reduce the number of protective filings by litigants who wish to stop the running of the statute of limitations. The Court also noted that "avenues exist by which the burdens of multiple lawsuits may be avoided ... [such as] consolidation in appro-

priate cases and multidistrict proceedings." *Id.* at 353, 103 S.Ct. 2392 (citations omitted).

**6.** At the start of *Crown*, 462 U.S. at 348–49, 103 S.Ct. 2392, the Court noted that two courts of appeals—the Ninth and the Second Circuits—had held that *American Pipe* tolling applied only to putative class members who

The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action "until and unless they received notice thereof and chose not to continue." *American Pipe*, 414 U.S. at 551, 94 S.Ct. 756. Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time. Once they cease to be members of the class—for instance, when they opt out or when the certification decision excludes them—the limitation period begins to run again on their claims.

Nothing in the Supreme Court decisions described above suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved. To the contrary, the Supreme Court has repeatedly stated that " 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " *Crown*, 462 U.S. at 353–54, 103 S.Ct. 2392 (quoting *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756). We see no reason not to take this statement at face value.

It would not undermine the purposes of statutes of limitations to give the benefit of tolling to all those who are asserted to be members of the class for as long as the class action purports to assert their claims. As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them. *See, e.g., American Pipe*, 414 U.S. at 554–55, 94 S.Ct. 756 (noting that the purposes of statutes of limitations "are satisfied when … a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment"). A defendant is no less on notice when putative class members file individual suits before certification. The Supreme Court explained that "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights," *Crown*, 462 U.S. at 352, 103 S.Ct. 2392; the same is certainly true of class members who file individual suits before the court decides certification.

In concluding that the Appellants could not benefit from *American Pipe* tolling, the district court stated that the goal of avoiding a "needless multiplicity of actions" is undermined when class members file individual suits before a certification motion is decided. The district court reasoned that class members who wait to sue individually until after the class certification decision will be in a "better position to evaluate whether they wish to proceed with their own lawsuit." Moreover, class members' desire to sue separately may "evaporate" once they have a chance to assess the class representatives' performance.

sought to intervene after certification was denied. *Crown* thus overruled those decisions. In one of those decisions, *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977), putative class members had filed an individual suit before a class certification motion was decided. The Appellants argue that because *Crown* overruled *Arneil*, and *Arneil* involved a fact pattern similar to the present case, *Crown* affirms that those who file suit before certification are entitled to tolling. However, *Crown* did not address the issue; the only part of *Arneil* it squarely addressed was whether non-intervenors may ever benefit from *American Pipe* tolling.

The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown*, 462 U.S. at 353, 103 S.Ct. 2392. The *American Pipe* tolling doctrine was created to protect class members from being *forced* to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

We hold that because Appellants were members of a class asserted in a class action complaint, their limitations period was tolled under the doctrine of *American Pipe* until such time as they ceased to be members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision.[7]

### Conclusion

The judgment of the district court is VACATED, and the case is REMANDED for further proceedings.

---

7. We need not consider the Appellants' alternative argument that their claims qualify for the longer statutes of limitations in the Sarbanes–Oxley Act.